IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| LINDA SADR,<br><br>    *Petitioner,*<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    *Respondent.* | 1:10-CR-00437<br><br>Hon. Liam O'Grady |

## MEMORANDUM OPINION

Linda Sadr, an inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. She claims that she received ineffective assistance of counsel during the plea negotiations that led to her incarceration. She now seeks to vacate, set aside, or amend her sentence. The Government has filed its response in opposition, to which Ms. Sadr replied. Ms. Sadr also filed an amendment to her initial petition and an addendum to her reply. For the reasons stated below, the motion is DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY

In 2010, the government was investigating Ms. Sadr for participating in a fraudulent mortgage scheme that began as early as 2004. Under this scheme, Ms. Sadr obtained clients by telling them that she could help eliminate their mortgages. She falsely told these clients that she had successfully eliminated mortgages in the past and that she had a high success rate. By collecting fees and advance mortgage payments from a few individuals, Ms. Sadr was able to completely pay off the real estate debt for select clients, and she used the stories from those clients to gather others. In reality, Ms. Sadr was not able to eliminate mortgages as she had

1

claimed, and banks subsequently foreclosed on most of her clients' properties. The victims of this Ponzi scheme lost more than $9.6 million.

Beginning in 2010 and throughout the relevant time period, Ms. Sadr was represented by Assistant Public Defender Kevin Brehm. His counterpart for the government was Assistant United States Attorney Marla Tusk. In October 2010, Ms. Tusk and Mr. Brehm began to discuss the possibility of a plea agreement. Ms. Tusk sent Mr. Brehm a draft agreement that included a pre-indictment guilty plea to one count of wire fraud and a stipulated statement of facts to which Ms. Sadr would need to agree in order to accept the plea. Through October and November of 2010, Mr. Brehm and Ms. Tusk exchanged emails and negotiated the applicable terms of the plea agreement and the statement of facts.

On November 12, 2010, Mr. Brehm sent Ms. Tusk an email informing her: "I met with Ms. Sadr at length on Wednesday afternoon, and she followed up with me earlier today. The plea agreement looks fine and she will sign it. There remain some concerns with the latest [statement of facts] you sent, in that Ms. Sadr wants to plead guilty but does not want to admit certain allegations that she firmly believes are incorrect." Gov't Opp'n Br., Ex. 6 at 2 (Dkt. No. 94-6). Mr. Brehm attached a revised statement of facts to the email and stated: "Please let us know if these changes can be agreed to. If not, then I anticipate that at the arraignment on the indictment, I will indicate to the court that Ms. Sadr wants to settle the case and plead guilty and not go to trial, but that we are unable to agree on the SOF language . . ." *Id.* Ms. Tusk replied the next day informing Mr. Brehm that the changes were not acceptable. After this email exchange, the plea negotiations broke down and the government proceeded to an indictment, which was returned against Ms. Sadr on November 23, 2010. At her arraignment on December

2

3, 2010, she pleaded not guilty to all charges and demanded a jury trial. The Court set her bond at $500,000.

On January 6, 2011, Ms. Sadr again appeared before the Court, this time to change her plea from "not guilty" to "guilty." At the beginning of the hearing, the Court informed Ms. Sadr of her constitutional rights and asked whether she was satisfied with her counsel. Tr. of Plea Hrg., 3-8, Jan. 1, 2011 (Dkt. No. 14). Ms. Sadr indicated that she was. *Id.* The Court then proceeded to discuss each of the eight counts against Ms. Sadr. For each count, the Court confirmed that she went over the evidence against her with Mr. Brehm. Ms. Sadr responded that she had done so and that she understood the charges against her and the evidence supporting those charges. *Id.* at 14-18.

The Court also explained how the Sentencing Guidelines work. It noted that "there may be disagreement among the parties as to what the proper Guideline range is, and that [the Court] will ultimately determine [your sentence] on the day of sentencing." *Id.* at 8. Importantly, the Court asked: "Have you gone over those Sentencing Guidelines with Mr. Mr. Brehm," to which Defendant replied: "Yes, your honor." *Id.* The Court also noted that part of sentencing included "look[ing] at the various factors under Section 3553 of our code" and asked if Ms. Sadr had "gone over those different factors." *Id.* Ms. Sadr responded: "Yes, Your Honor." After this initial colloquy, she pleaded guilty to all counts against her. *Id.* at 14.

Despite this initial plea, however, the Court expressed some concerns that Ms. Sadr might not fully understand "what the Government believes you did and why it's unlawful." *Id.* at 17. The concern came from a dispute in the statement of facts that accompanied the plea. In advance of the hearing, Ms. Sadr had submitted a statement of facts that she agreed to as part of her guilty plea. The government believed this statement was insufficient to support a guilty plea and

therefore proffered additional evidence that it intended to prove if the case was to proceed to trial. This evidence included the names of victims, dates of money transfers, and evidence of victims who would be called to testify against Ms. Sadr.

In light of the different versions of the statement of facts, the Court engaged in a detailed discussion of the facts as presented by both sides. At first, when Ms. Sadr returned to the podium, she disputed some of the facts as presented by the government. She agreed with all of the dates and names of the victims but indicated that she had not intended to defraud the victims in the earlier part of the scheme. The Court explored this further:

> THE DEFENDANT: Your Honor, the reason why the guilty plea is because throughout this, after a few years in '07 as I talked to people, I needed to be more clear. And I had information they didn't have. And in '05 and '06 I could have represented more clearly to not-- It wasn't full disclosure and I screwed up because they lost their homes.
>
> THE COURT: Well, that's what intent to defraud is, is that you realized that, well, if these people kn[e]w the full truth, they wouldn't invest this money, or they would want their money back immediately, and I don't want to tell them that because—
>
> THE DEFENDANT: In 2007 then that's when that, what's when I had, that's what should have happened and that did not happen. That's why I have to plead guilty.

*Id.* at 36.

Despite this admission, Ms. Sadr stated that she did not believe she had an intent to defraud in 2004-06. This caused the Court to seek clarification from Ms. Sadr and to elicit additional proffers from the Government and from Mr. Brehm. The Court explained that if Ms. Sadr disputed the Government's facts, then it was her: "right to plead not guilty and require the Government to prove its case beyond a reasonable doubt. If you want to plead guilty to these offenses, you have to be prepared to tell me that, yes, I understand that that's the Government's

4

statement of facts and I believe they could prove that beyond a reasonable doubt if the case went

to trial . . ." *Id.* at 37.

In response, Mr. Mr. Brehm spoke up and explained the evidence that he believed the

Government would set forth at a trial. After Mr. Brehm's explanation, the Court asked Ms. Sadr:

"Do you need more time to speak to Mr. Mr. Brehm about [the Government's evidence], Ms.

Sadr?" *Id.* at 39. Ms. Sadr did not accept the invitation to speak further with her counsel. The

government then proffered additional evidence, which included testimony from FBI Officer

Brick White, who detailed bank transactions dating to 2004 when the alleged fraud began.

After this final recitation of facts, the Court again clarified the options available to Ms.

Sadr:

> THE COURT: Do you agree or disagree, yes or no, the Government could prove beyond a reasonable doubt, as they have just represented, that several victims would come on and say that you misrepresented the success of the program . . . do you agree or disagree, yes or no, that their evidence would prove beyond a reasonable doubt that this scheme began in 2004 . . . do you believe that the Government could prove if the Case went to trial that the scheme began in 2004, and that they could prove further that there was law of criminal intent to further this scheme through the wire fraud and bank fraud and monetary transaction counts, 1 through 8 of the indictment?

> THE DEFENDANT: Your Honor, I apologize, I agree all up until you said—I agree, yes, the answer is yes, and then you said that there was criminal intent, and I am not clear about that because there was never a criminal intent.

> THE COURT: Intent to defraud is a criminal intent. So the question is, do you believe that they could prove beyond a reasonable doubt—

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: --the charges against you in the indictment

> THE DEFENDANT: Yes, Your Honor.

*Id.* at 56. The Court verified that Mr. Brehm also agreed that the Government could prove its

case beyond a reasonable doubt. Mr. Brehm stated that he had not been able to review all of the

evidence provided by the Government, but that from the evidence he had reviewed, "it certainly seems that they will have enough evidence that if it goes to trial to present to the jury to cover all the allegations and all the time periods and the different wirings and mailing and things of that nature." *Id.* at 57.

Relying on the representations from Ms. Sadr, Mr. Brehm, and the Government, the Court entered a guilty plea and Ms. Sadr proceeded to sentencing. On June 17, 2011, Ms. Sadr was sentenced to 144 months as to Counts 1-6 and a concurrent sentence of 120 months for counts 7 and 8. Her sentence included three enhancements for a total guideline range of 168-210 months. *See* U.S.S.G. § 2B1.1(b)(10)(C) (sophisticated means); U.S.S.G. §3A1.1(b)(2) (large number of vulnerable victims); U.S.S.G. § 2S1.1(b)(2)(A) (engaging in monetary transactions in property derived from unlawful activity). She appealed the judgment on July 1, 2011, and the Fourth Circuit affirmed in an unpublished opinion. Ms. Sadr filed this motion within the one-year limitations period provided by 28 U.S.C. § 2255(f). She alleges ineffective assistance of counsel during plea negotiations as the constitutional basis for her motion.

## II. DISCUSSION

A petitioner is entitled to relief under 28 U.S.C. § 2255 if she demonstrates either: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. When considering a § 2255 motion, a federal court "must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle her to relief." *United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992).

6

Claims of ineffective assistance of counsel are properly brought in a § 2255 motion. *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong of the *Strickland* test requires a showing that counsel failed to provide reasonably effective assistance; that is, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687-88, 690. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the defendant to show prejudice. *Id.* at 694. Under this prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The burden of proving both prongs is on the petitioner who seeks to challenge the conviction, and the petitioner must prove both prongs by a preponderance of the evidence. *Id.* at 696-97; *Berry v. United States*, 884 F. Supp. 2d 453, 457 (E.D. Va. 2012).

Ms. Sadr essentially alleges three cognizable theories of ineffective assistance of counsel. First, Ms. Sadr claims that Mr. Brehm did not adequately explain the potential effects of the first plea offer she received, what the sentencing guidelines meant, and the possibility of sentencing enhancements if she did not accept the pre-indictment plea. Second, and relatedly, she alleges that at the plea stage, Mr. Brehm did not explain that she was pleading guilty to the eight-count indictment and not to the one count of wire fraud that the Government had first offered. She claims that, but for this lack of explanation at the pleading and pre-indictment stages, she would have accepted the pre-indictment plea along with the statement of facts initially offered by the Government. Third, she alleges that Mr. Brehm did not adequately prepare for her sentencing hearing. In support, she recites the fact that he did not review all her documents and did not

7

interview the witnesses that she suggested. Because Ms. Sadr is not able to meet the *Strickland* standard for any of these claims, her motion will be denied.

### A.    Ineffective Assistance at the Pre-Indictment Stage

Under *Padilla v. Kentucky*, the "negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." 559 U.S. 356, 373 (2010); *see also Missouri v. Frye*, 132 S.Ct 1399, 1408 (2012) (holding that defense counsel has the duty to communicate formal plea offers from the prosecution). Thus, the *Strickland* standard applies to Mr. Mr. Brehm's representation of Ms. Sadr prior to the indictment and required him to discuss any plea offers with Ms. Sadr. *Id.*

"The inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargain process. This is a difficult question." *Frye*, 132 S.Ct at 1408. The Supreme Court has not defined the precise contours of this responsibility, but it suggested that counsel should at least: (1) communicate that an offer was made; (2) relay the precise terms of the offer; and (3) give Defendant time and the opportunity to respond. *Id.* Beyond that, counsel should be guided by rules of professional responsibility. *Id.*

Ms. Sadr does not allege that Mr. Brehm failed to inform her of the plea offer or of the Government's statement of facts. Rather, she claims that he did not fully explain what the effects of denying that offer could be. Ms. Sadr suggests that the only advice she received regarding the plea agreement and the statement of facts was that "if it's not true, you can't sign [the statement of facts]." She maintains that if she had known denying the plea offer meant that she would later be subject to sentencing enhancements and criminal liability for the full eight counts against her, then she would have accepted the plea in the first instance.

It is evident that the Ms. Sadr was communicating with Mr. Brehm during the plea negotiation process. The emails between Mr. Brehm and Ms. Tusk indicate that Mr. Brehm met with Ms. Sadr "at length" and discussed changes to the statement of facts and the plea agreement. Some of these changes were adopted and others were not, but the negotiations went on for more than a month until Mr. Mr. Brehm relayed that: "Ms. Sadr wants to plead guilty but does not want to admit certain allegations that she firmly believes are incorrect." In light of Ms. Sadr's refusal to accept the Government's statement of facts, the plea negotiations broke down, but this consistent exchange between Mr. Brehm and Ms. Tusk indicates that the plea offer was communicated to Ms. Sadr and that Mr. Brehm discussed the details of the plea and statement of facts with her. This is further confirmed by Ms. Sadr's statements that Mr. Brehm advised her that she could not sign the statement of facts if it was not true.

Based on these allegations, the Court cannot find that Ms. Sadr has met her burden of showing that Mr. Brehm fell below the level of a reasonable attorney when he failed to communicate certain sentencing-related details to her. *See Strickland*, 466 U.S. at 659 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . [Therefore,] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). In this case, Mr. Brehm communicated the plea offer to Ms. Sadr and used her input in his plea negotiations with the Government. Further, his proposed amendments to the plea agreement and the statement of facts suggest that Mr. Brehm went through the documents with Ms. Sadr before responding to the Government. Indeed, Ms. Sadr admits that Mr. Brehm reviewed the document with her when she notes that Mr. Brehm advised her not to sign any document that was not true. As far as the time period goes, the plea negotiations between Mr. Brehm, the Government, and Ms. Sadr

9

lasted from at least October 5, when the initial offer was delivered, to November 13, when the plea negotiations broke down. This is a reasonable period of time for a defendant to consider, negotiate, and accept or reject a plea offer.

Moreover, even if Mr. Brehm's conduct did fall below an acceptable level of professional competence, Ms. Sadr cannot show any resulting prejudice. This is because Ms. Sadr "firmly believe[d]" that the Statement of Facts accompanying the plea agreement was inaccurate. Indeed, she continued to dispute certain facts at her change-of-plea hearing. As is illustrated by the breakdown in plea negotiations surrounding the Statement of Facts, this document was a prerequisite to the government agreeing to the plea. Without accepting the Statement of Facts, the plea necessarily failed, and Ms. Sadr has not put forth any evidence to suggest that she would have changed her mind and agreed to these facts if Mr. Brehm's counseling had been different.

Ms. Sadr may very well have been better off taking the initial plea agreement, but the blame for failing to do so cannot now be pinned on her attorney, who took reasonable steps to inform her of the plea offer and gave her ample opportunity to accept it.

### B.    Ineffective Assistance Surrounding the January 6, 2011 Plea Hearing

On Ms. Sadr's second claim, it is unnecessary to examine the quality of Mr. Brehm's counsel because she has not alleged any prejudice. As the Fourth Circuit has held, if a trial court properly informed Ms. Sadr of the potential sentence she faced, then she "could not be prejudiced by any misinformation [her] counsel allegedly provided [her]." *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).

In this case, the Court took great pains to inform Ms. Sadr of the facts alleged against her and the consequences of pleading guilty. The trial transcript reveals that the Court went through each of the counts individually, and the Government proffered sufficient evidence to prove the

10

elements of each charge that she faced.  Before making any findings or accepting her plea, the

Court made sure that Ms. Sadr knew her rights and understood each of her charges.  Moreover,

the Court clearly explained to her the effect of the Sentencing Guidelines and the process for

sentencing.  During the sentencing-related part of the colloquy, Ms. Sadr even admitted that she

reviewed the Sentencing Guidelines and the various sentencing factors under § 3553 with Mr.

Brehm.

Thus, even if Mr. Brehm did not fully explain all of these factors to Ms. Sadr (contrary to

Ms. Sadr's statements that he did), the January 6, 2011 hearing clarifies that the Court remedied

any potential deficiencies in attorney-client communication.  If the Court had accepted Ms.

Sadr's guilty plea at the beginning of the hearing, and without any significant discussion with

her, it might have yielded a different result.  However, the 76 pages of hearing transcript reveal

that the Court carefully undertook the duty of ensuring that Ms. Sadr knew the charges against

her, and that she knew the consequences of pleading guilty to those charges.  As such, before she

entered her formal plea, Ms. Sadr had been given all the information that she claims was missing

from Mr. Brehm's counsel.  Therefore, she is unable to show any prejudice, and this claim must

be denied.

### C.    Ineffective Assistance at Sentencing

The Sixth Amendment also gives Ms. Sadr a right to effective assistance of counsel at her

sentencing hearing.  *Glover v. United States*, 531 U.S. 198 (2001).  In order to prove ineffective

assistance at this stage, however, a petitioner must provide more than conclusory allegations.

*United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).  To show prejudice, she must point to

specific evidence that, if it had been in front of the Court, would have caused the Court to order a

lesser sentence.  *Id.*

11

Ms. Sadr cannot point to any such exculpatory evidence, but instead makes broad claims regarding a "lack of a defense" and Mr. Brehm's failure to look over her documents or interview the witnesses that she suggested. The strongest piece of evidence that she offers is Mr. Brehm's own admission at the plea hearing that he had not reviewed all of the Government's evidence. With this admission, if Ms. Sadr could point to a piece of evidence that Mr. Brehm missed and that would have assisted her at sentencing, she might have a credible claim of prejudice. However, her failure to identify a single piece of credible evidence that could have conceivably altered her sentencing means that this claim must also fail.

Ms. Sadr submits that Mr. Brehm did not track down or seek out information that would have helped her at sentencing. An examination of one of the "key witnesses" that Ms. Sadr identified serves as an example. In a November 9, 2010 email, Ms. Sadr asked Mr. Brehm to look into an individual named Kim Nguyen. Def's Mot. To Vacate, Ex. 1 at 37-38 (Dkt. 87-1). Nguyen was apparently connected to some of Ms. Sadr's assets and was also the subject of a civil case relating to fraudulent diamond sales. *Id.* Ms. Sadr's email to Mr. Brehm states: "Her story . . . is another *very important KEY to my defense*." *Id.* (emphasis in original). In describing Nguyen, however, Ms. Sadr notes that her case was "heard before Judge Lorraine No[rd]lund who (while referencing Kim) stated she should be tried in a criminal court for perjury...and that 'nothing she said' could be trusted." *Id.* As any competent defense counsel should know, a reputation for perjury generally is not the first quality to look for in a sentencing witness. Nonetheless, an October 5, 2010 email from Mr. Brehm to Ms. Tusk shows that he responded to this lead and inquired about "documents connected to Nguyen." Gvt's Opp'n, Ex. 1 at 2 (Dkt. No. 94-1).

12

The Nguyen example is useful because it is the most concrete example of a piece of evidence that Ms. Sadr thinks should have been reviewed and/or presented to the Court. However, this example does not meet either prong of *Strickland*. With regard to the first prong, the emails illustrate that Mr. Brehm did in fact look into the issue of Nguyen, and there is nothing to suggest that he failed to review or ignored any evidence that he received from the Government in response to this request. Furthermore, even if Mr. Brehm did fail to review this evidence or interview Nguyen, the emails that Ms. Sadr produced provide no indications of prejudice. In fact, given Nguyen's reputation for perjury, it seems highly unlikely that putting her on the stand at sentencing would have done anything to change the Court's order. In short, Ms. Sadr's conclusory allegations have not identified any evidence that would have caused the Court to change her sentence.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Linda Sadr's petition to vacate, set aside, or amend her sentence. An appropriate order shall issue.

September 27, 2016
Alexandria, Virginia

_____ /s/

Liam O'Grady
United States District Judge

13